IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY ALLEN MCELHANEY

               Plaintiff,

-vs-

HEIDI WASHINGTON, MDOC Director,
JOHN CHRISTIANSEN, Warden,
RUSSELL SCABBO, PhD, Unit Chief,
MARY ZAMORA, H. VANDUSSEN, Healthcare Unit Mgr.,
RICHARD D. RUSSELL, Grievance Section Ofc. Mgr.,
STEPHANIE SMOYER, RN, MICHELLE L. KIRBY, RN,
GERALD A. MASELY, RN, DOUGLAS SHELTON, RN, DONNA ROHRS, PA
JORDAN BLOCK, PA, MEGAN OAKS, RN and JESSICA MOORE, LPN,
CORRECTIONAL MEDICAL SERVICES, Inc. and
PRISON HEALTH SERVICES and CORIZON HEALTH, INC.,
in their individual and official capacities,
               Defendants.

Case No.
Honorable:
Magistrate:

---

THE MICHIGAN LAW FIRM, PC
By: Racine M. Miller (P72612)
Attorney for Plaintiff
135 N. Old Woodward Ave., Ste. 270
Birmingham, MI 48009
(844) 464.3476 F: 248.237.3690
racine@themichiganlawfirm.com

---

## PLAINTIFF'S COMPLAINT

NOW COMES PLAINTIFF, by and through counsel, and for his

Complaint states as follows:

1.      This is a civil rights action for damages against Michigan Department

of Corrections' (MDOC) director Heidi Washington, Warden John

Christiansen and against the MDOC's contract medical providers Prison Health Services, Inc. (PHS) and Corizon Health, Inc. (CHS) and their employees or agents Russel Scabbo, Mary Zamora, H. VanDussen, Richard D. Russell, Stephanie Smoyer, Michelle Kirby, Gerald A. Masely, Shelton Douglas Shelton, Donna Rohrs, Jordan Block, Megan Oaks and Jessica Moore.

2.     Plaintiff's claims arise out of inadequate medical care provided to him while he was incarcerated at the Central Michigan Correctional Facility in Gratiot, Michigan.

3.     The heart of Plaintiff's complaint is that the defendants were deliberately indifferent to his serious medical needs by failing to timely diagnose and treat his ruptured bicep tendon, in violation of the Eighth Amendment to the United States Constitution, as actionable through 42 U.S.C. § 1983.

4.     The plaintiff exhausted his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

<u>JURISDICTION</u>

5.     This is an action for money damages brought pursuant to 42 USC §1983, and 1988, and the Eighth and Fourteenth Amendments to the United States Constitution against these named defendants in their individual

capacities and/or official capacities and against Prison Health Services, Inc. and Corizon Health, Inc.

6.    The said officers, acting at all relevant times under the color of state law, demonstrated deliberate indifference to the serious risk of harm to Plaintiff, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as state law.  The actions taken against Plaintiff resulted in severe physical and emotional injury, monetary damage, distress, and also causing, but not limited to, humiliation, anxiety, permanent disfigurement and other physical ailments and emotional damages. Defendants' conduct is so egregious and outrageous and intentional, that Plaintiff seeks punitive damages.

7.    Jurisdiction is conferred by 28 USC §'s 1331 and 1343(a)(3) and (4) and venue lies in the Western District of Michigan pursuant to 28 USC 1391(b). This court has supplemental jurisdiction of the Michigan law state claims which arise out of the nucleus of operative facts common to Plaintiff's federal claims pursuant to 28 USC §1367.

8.    The amount in controversy exceeds seventy-five thousand dollars, excluding interest, costs and attorneys fees.

9.    Venue is proper within the Eastern District of Michigan because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district, certain defendants reside within this district,

3

and upon information and belief, all the defendants reside in the state of
Michigan.

10.     The plaintiff exhausted his administrative remedies pursuant to the
Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

PARTIES

11.     Plaintiff was in the custody of the MDOC during the events giving rise
to this Complaint, from December 2019 to and through December 9, 2020.

12.     Defendant John Christiansen was, at all times relevant, acting under
color of state law as the Warden of the Central Michigan Correctional
Facility and agent and employee of MDOC, and upon information and
belief, helped formulate and implement the customs, policies, practices,
procedures, and staff training protocols related to medical care in MDOC
facilities, and bears the ultimate responsibility for inmate health and safety,
and was acting under color of law.

13.     Defendant Heidi Washington was, at all times relevant, acting under
color of state law as the Director of the Michigan Department of
Corrections, an agent and employee of MDOC, and upon information and
belief, helped formulate and implement the customs, policies, practices,
procedures, and staff training protocols related to medical care in MDOC
facilities, and bears the ultimate responsibility for inmate health and safety,
including Plaintiff.

4

14.     Defendant Prison Health Services, Inc., (PHS), is a for-profit corporation licensed to do business in Michigan. At all relevant times PHS was obligated by contract and delegation under state law to provide managed health care to MDOC prisoners generally and to Plaintiff in particular. Upon information and belief, PHS helped formulate and implement the customs, policies, practices, procedures, and staff training protocols related to medical care in MDOC facilities.

15.     Defendant Corizon Health, Inc., (CHI), is a for-profit corporation licensed to do business in Michigan. At all relevant times CHI was obligated by contract and delegation under state law to provide managed health care to MDOC prisoners generally and to Plaintiff in particular. Upon information and belief, CHI helped formulate and implement the customs, policies, practices, procedures, and staff training protocols related to medical care in MDOC facilities.

16.     Defendant Russell Scaabo, PhD., was, at all times relevant, acting under color of state law as the Unit Chief of the Central Michigan Correctional Facility and as agent and employee of MDOC was obligated to provide managed health care to MDOC prisoners generally and to Plaintiff in particular. Upon information and belief, Dr. Scaabo helped formulate and implement the customs, policies, practices, procedures, and staff training protocols related to medical care in MDOC facilities

5

17.    Defendants Mary Zamora and H. VanDussen were, at all times relevant, acting under color of state law as Heathcare Unit Managers and as agents and employees of MDOC whose duties, responsibilities and obligations involved examination, assessment, referral and provision of medical care and treatment to prisoners confined to the Michigan Department of Corrections at the Central Michigan Corrections Facility (STF) located in St. Louis, Michigan including Plaintiff.

18.    Defendant Richard D. Russell, was at all time relevant acting under color of state law as the Grievance Section Office Manager, whose duties, responsibilities and obligations involved assessment, referral and provision of medical care and treatment to prisoners confined to the Michigan Department of Corrections at the Central Michigan Corrections Facility (STF) located in St. Louis, Michigan including Plaintiff.

19.    Defendants Stephanie Smoyer, Jeanna M. Bitler, Michelle L. Kirby, Gerald  Masely, Shelton Douglas, and Megan Oaks were, at all times relevant, acting under color of state law as a Registered Nurse, whose duties, responsibilities and obligations involved examination, assessment, referral and provision of medical care and treatment to prisoners confined to the Michigan Department of Corrections at the Central Michigan Corrections Facility (STF) located in St. Louis, Michigan including Plaintiff.

20.     Defendant Jessica Moore was, at all times relevant, acting under color of state law as a Licensed Practical Nurse under the employ of the MDOC whose duties, responsibilities and obligations involved examination, assessment, referral and provision of medical care and treatment to prisoners confined to the Michigan Department of Corrections at the Central Michigan Corrections Facility (STF) located in St. Louis, Michigan including Plaintiff.

21.     Defendants Donna Rohrs and Jordan Block were, at all times relevant, acting under color of state law as Physician's Assistants and under the employ of the MDOC whose duties, responsibilities and obligations involved examination, assessment, referral and provision of medical care and treatment to prisoners confined to the Michigan Department of Corrections at the Central Michigan Corrections Facility (STF) located in St. Louis, Michigan including Plaintiff.

22.      Actions by the MDOC's agents or employees and by PHS and/or CHI and its agents or employees were carried out under color of state law.

23.     Each defendant is sued in his or her individual and official capacities, and was at all times relevant, acting under color of law.

24.     The heart of Plaintiff's complaint is that the defendants were deliberately indifferent to his serious medical needs by failing to timely

7

diagnose and treat his torn left bicep, in violation of the Eighth Amendment to the United States Constitution, as actionable through 42 U.S.C. § 1983.

25.    The plaintiff exhausted his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

26.    At all relevant times the law was clearly established such that qualified immunity is no defense to the plaintiff's constitutional claims.

<u>FACTUAL ALLEGATIONS</u>

27.    On December 26, 2019, Plaintiff, while serving time as an inmate with the Michigan Department of Corrections, suffered a serious injury while playing volleyball, specifically, a torn muscle in his left arm.

28.    On January 3, 2020, Plaintiff notified the MDOC by flying a "kite" and asking for medical treatment for the torn muscle.

29.    January 7, 2020, another "kite" issued from Plaintiff, "I think I tore my left bicep or the tendon in the elbow.  I didn't think much of it at first until my arm turned black and blue and the pain has not went away."

30.    Gerald A. Masely, RN

      a. 1/7/20 scheduled a nurse sick call for 1/9/20 where the reason was "I think I tore my left bicep or the tendon in the elbow. I didn't think much of it at first until my arm turned black and blue and the pain has not went away."

31.    January 14, 2020 Plaintiff had a phone call encounter with Michelle Kirby, RN, who scheduled a nurse encounter , and "verified the kite was

processed in nextgen on 1/7/20 but not transferred to COMS.  Will schedule nursing visit in COMS."

32.     Michelle Kirby, RN examined plaintiff on January 15, 2020:

    a.  The injury of 12/26/19 was recognized and documented.

    b.  Left bicep had a "sunk-in" appearance and was tender to touch.

    c.  "Education provided" was a Handout on Strains and Sprains, and plaintiff was instructed to kite and follow up in a week.

    d.  Medical Detail Special Accommodations:

        i.  From 1/15/20 to and through 1/22/20, an acewrap

        ii.  From 1/15/20 to 1/17/20, bagged ice twice a day

        iii.  No sports activities until 1/22/20

33.     Shelton Douglas, RN, examined plaintiff on January 23,2020:

    a.  Noted injury was sustained "about a month ago"

    b.  Noted deformity and pain on palpation.

    c.  Medical Detail Special Accommodations:

        i.  From 1/23/20 to and through 2/06/20, an acewrap

        ii.  No restrictions.

34.     Donna Rohrs, RN, examined Plaintiff on February 19, 2020:

    a.  Noted  ICD-101 code S46. ("S46 being "injury of muscle, fasia and tendon at shoulder and upper arm level"), "Temporary/Acute"

    b.  she designated his complaint as "routine" and recommended an ultrasound be conducted within 14 days, specifically noting that

---

[1] International Classification of Diseases

     c.  "diagnosis of a distal biceps tendon rupture using onjly clinical signs can be challenging and treatment typically involves expedited surgical repair. Therefore, diagnostic imaging plays an important role in management..."

35.    On February 27, 2020, Plaintiff was approved for an ultrasound of suspected torn muscle, but scheduling of the same was denied by Jessica Moore.

36.    On March 30, 2020, Megan Oaks and Russell Scabbo denied Plaintiff's grievances and denial of his ultrasound because "the Executive Order given by the Governor to delay/stop all non-urgent medical procedures and testing in the state of MI...." despite having actual knowledge that Plaintiff suffered a torn bicep on December 29, 2019.

37.    April 23, 2020, Jessica Moore, LPN, indicates that "Pt was scheduled for ultrasound on 4/1/20, cancelled due to COVID-19, not rescheduled yet."

38.    April 24, 2020, Plaintiff files his Step 2 grievance, indicating once more his torn muscle, and the risk of inability to repair due to delay, which is denied by Patricia Lamb on June 12, 2020, such denial demonstrating a deliberate indifference to the medical needs of Plaintiff.

39.    Jordan Block

     a.  2/28/20, CRV to see if offsite request for Bicep ultrasound was approved; consult request was approved.  Will send CHJ-646 (Diagnostic Testing Results Notification)  to inform patient..."

     b.  4/8/2020, telephone encounter, patient awaiting ultrasound

10

c. 4/24/20; noted it's been over 30 days since approval for ultrasound, and that the muscle injury was "…Stable.  No new changes; "Patient to KITE healthcare if any questions or concerns."

d. 5/12/20 requested an **urgent request for ultrasound to be performed at local hospital** instead of Duane Waters Hospital because of "**delay in Ultrasound at Duane Waters Hospital with current COVID-19 protocol,**" noting a popeye deformity, negative hook test, and negative biceps squeeze," and that that "**treatment typically involves expedited surgical repair, therefore, diagnostic imaging plays an important role in management**…"

e. 6/9/20 noted that **it has been 30 days or more since 407 approved, and an ultrasound remains medically necessary."**

f. 6/11/20 made a provisional diagnosis of Left Bicep Tendon Rupture

    i. ICD-102 code S46. ("S46 being "injury of muscle, fasia and tendon at shoulder and upper arm level"), "**Chronic**"
    ii. and requested an urgent orthopedic consult from Dr. Haverbush

g. On June 11, 2020, noted that "patient had Ultrasound performed on 5/14/20 for suspected bicep tear…" and that the "…lack of intervening hematoma and fatty atrophy iof the bicipital musculature is compatible with a remote injury" and that

h. "Will submit request for urgent ortho followup given above findings."

i. On June 20, 2020, noted that "Cancellation of previously approved Duane Waters Hospital UltraSound (study was performed locally)"

j. on June 22, 2020, noted that "It was deemed that bicep tendon tear was not repairable at this time given retraction of the muscle/time since initial injury."

---

[2] International Classification of Diseases

40.    May 14, 2020 Anthony Salvador, DO, from Sparrow Health System performed an Ultrasound on Mr. McElhaney and noted a history of S46.102A injury of long head of left biceps and found a "full-thickness retracted tear of the bicipital tendon from the radial tuberosity, retracted at least 8 cm from the joint line.  Lack of intervening hematoma and fatty atrophy of the bicipital musculature is compatible with a remote injury."

41.    May 17, 2020, Dr. Thomas J. Havebush, MD, finally saw Plaintiff after 6 months of the tendon rupture, and does not believe that an attempt at repair would be reasonable, due to the traction of the tendon and atrophy of the muscle, acknowledging without question the functional deficit Plaintiff will now suffer for the rest of his life.

42.    On or about July 20, 2020 Stephani Smoyer, Richard D. Russell rejected Plaintiff's Step 3 grievance, which appealed the denial of an ultrasound to address his arm injury; the rejection was signed off on/approved by Warden John Christensen, demonstrating deliberate indifference to a known serious medical need specifically, that Plaintiff had suffered a significant injury on December 29, 2019, and that failure to swiftly diagnose and treat would result in the inability to repair at all.

43.    6/10/2020 Patricia Lamb, RN, BSN, indicated that

Grievant claims that he was denied timely evaluation and treatment after his early January report of a late December injury. Grievant

12

indicates that he injured his bicep and, as of 3/13/2020, had still not received the ultrasound ordered and approved to further evaluate this injury. Grievant writes," ... there is only so long of a time in which to fix or reattach this muscle before it becomes impossible to fix and I lose use of that muscle head. Time is running out to fix this."

Review of the electronic medical record reveals a request was received from grievant on 1/7/2020 in which he reported that he thought he had tom his left bicep or the tendon in his elbow. A nursing evaluation was scheduled to occur on or around 1/9/2020 to evaluate this issue. **However, this appointment was apparently not transferred when the electronic medical record was changed to a new system shortly thereafter. As a result, grievant was not assessed as planned.** On 1/14/2020, a housing unit officer contacted Health Care on behalf of the grievant who subsequently inquired when he would be seen re: his injury. The omitted appointment was discovered at that time and a new appointment was scheduled for the following day. Grievant was evaluated by nursing on 1/15/2020. Documentation indicates that grievant reported he injured his left upper arm on 12/26/19. The nurse examined the area, noting that grievant' s bicep muscles were not symmetrical. Although grievant denied pain at rest, he did report sharp pain when flexing his left arm. The nurse issued an ACE wrap and scheduled a recheck for the following week. That recheck occurred on 1/23/2020, as planned. The nurse noted that grievant continued to report pain when using the left arm. The nurse also noted that grievant had full range of motion of the arm and a slight deformity at the base of the left bicep. The nurse routinely referred grievant to the medical provider for further evaluation/treatment. Grievant was evaluated by the medical provider on 2/19/2020. The provider noted that grievant's left bicep had a "popeye" deformity distally.

The provider requested and received approval to order an ultrasound of the affected area to rule out a distal tendon rupture. It appears that the ultrasound was initially scheduled to occur on 4/1/2020. It was cancelled due to restrictions imposed by the COVID-19 pandemic and was ultimately rescheduled to occur on 5/14/2020. The ultrasound was completed on that date, as planned. The report of the ultrasound confirmed that grievant's bicep tendon is torn. Further intervention is pending at this time. It is acknowledged that earlier evaluation by nursing staff and the medical provider would have been preferred in

his case, issues that have been discussed with STF Health Care. Contributing factors within Health Care's control will be addressed as indicated. As outlined above, the ultrasound has been completed. Grievant is assured that medically necessary interventions will be provided, as indicated and approved. Grievant is encouraged to promptly notify Health Care should any adverse symptoms develop, persist or worsen in future. No further remedy may be offered at this time.

44.     December 9, 2020 Plaintiff is discharged with his untreated injury remaining as "chronic, injured muscle, current."

## COUNT I - 42 U.S.C. § 1983

## COUNT I - FEDERAL CONSTITUTIONAL VIOLATIONS

45.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

46.     The Defendants, each of them, at all times herein, owed Plaintiff the duty of protecting his federal constitutional rights, including the following guaranteed rights:

  a.  the right to adequate medical attention while in custody of Defendants;
  b.  the right to be free from unreasonable risk of bodily harm and injury caused unjustifiably while in custody of Defendants.
  c.  The right not to be subject to cruel and unusual punishment as contemplated by the Eighth Amendment of the US Constitution

47.     These Defendants, acting under color of state law, violated these rights by denying Plaintiff medical attention to a serious medical need in a

14

reasonably foreseeable time after Plaintiff originally complained about the problem.

48.    As a direct result of the Defendants' conduct, Plaintiff was caused to sustain severe, intractable, and constant pain for a period of weeks and now, permanent and debilitating injury.

49.    These actions, on the part of all Defendants, violated the United States Constitution, particularly the Eighth and Fourteenth Amendments, which is actionable pursuant to 42 USC §1983.

50.    As a result of Defendants' actions and omissions, Plaintiff has suffered damages which include but are not limited to the following: medical bills, great pain, mental anguish, emotional distress, disfigurement, embarrassment, and humiliation, permanent serious disfigurement and permanent scarring, and other permanent disabilities.

WHEREFORE, for all the above reasons, Plaintiff demands judgment against Defendants, jointly and severally, in whatever amount he is found to be entitled, as determined by the trier of fact, together with punitive and/or exemplary damages, costs, interests, attorney fees, including but not limited to such attorney fees as are allowable under 42 USC §1988.

## COUNT II – DEFENDANTS DIRECTOR WASHINGTON, WARDEN CHRISTIANSEN, UNIT CHIEF RUSSELL SCABBO, HEALTH UNIT MANAGERS MARY ZAMORA, H. VAN DUSSEN and RICHARD RUSSELL

### VIOLATION OF FEDERAL RIGHTS

15

51.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

52.    The defendants, and each of them, acting under color of state law, demonstrated deliberate indifference to Plaintiff's serious medical needs by failing to timely diagnose and treat his torn bicep, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, as actionable under 42 U.S.C. § 1983.

53.    The above-named defendants demonstrated deliberate indifference by failing to have an ultrasound timely performed on Plaintiff such that reparative surgery could not be performed.

54.    As the direct and proximate cause of the actions of defendants, and each of them, Plaintiff has suffered a permanent, disfiguring impairment and diminished ability to work and enjoy life from his full capacity, and continues to experience constant pain and discomfort.

55.    The violation of Plaintiff's Eighth Amendment rights stemmed in part from the MDOC defendants' and CHI and PHS defendants' customs, practices, procedures, and policies that allowed or facilitated the deliberate indifference to his medical needs.

56.    Specifically, the defendants with the authority to create customs, practices, procedures, or policies failed to draft, promulgate, adopt, or

enforce appropriate rules, regulations, procedures, orders, or protocols that could and should have prevented the acts of deliberate indifference committed against Plaintiff and that also could and should have prevented the injuries he suffered.

57.     Alternatively, the defendants with the authority to create customs or policies promulgated or implemented policies that caused the failure to timely diagnose and treat Plaintiff and also failed to ensure that he got timely testing, diagnosis, care, and treatment.

58.     As a direct and proximate result of the defendants' deliberate indifference, their customs and policies, and their failure to train, from 2019 to present Plaintiff suffered harm including but not limited to long-term and constant suffered physical pain, mental anxiety and emotional anguish.

59.     The Defendants, and each of them, owed duties to Plaintiff which included the duty to provide reasonable and adequate protection against serious risk of harm and to provide medical attention in a reasonably foreseeable time after Plaintiff's original complaints about being attacked. In addition, these duties include the duty to implement and monitor an adequate hiring and training program for all officers and deputies working at the Newaygo County Jail so that they would be capable of making decisions about the need for medical care which arose when there was not a health care professional present.

60.    These Defendants failed in these above duties to adequately train detention facility/jail personnel, and historically have had a policy, custom, and practice of failing to implement an adequate training program to properly train detention facility/jail personnel.

61.    These Defendants adopted, ratified and/or implemented the policies, practices and procedures which denied Plaintiff safety and security in his person along with medical treatment within a reasonable period of time and did so with deliberate indifference to the risk of serious harm and Plaintiff's serious medical needs thereby violating Plaintiff's constitutional rights.

62.    The acts and omissions of the Defendants taken pursuant to the de facto policies, practices and procedures, adopted, ratified and/or implemented by Defendants, impermissibly condoned and allowed for the denial of proper medical care and treatment to residents of the Newaygo County Jail, such as Plaintiff, which amounts to deliberate indifference in the denial of such detainees' civil rights as are guaranteed by the Constitution of the United States.

63.    The aforesaid acts and omissions of Defendants were all committed under color of law and under color of their official authority as a County, County Department, County officers/employees and/or peace officers.

64.    The acts and omissions of the Defendants constituted deliberate indifference to the serious and apparent medical needs of Plaintiff in

18

violation of the Eighth and Fourteenth Amendments to the Constitution of the United States and, hence, are actionable under 42 USC §1983.

65.    Despite Defendants' knowledge of the said illegal policies, practices and procedures, Defendants' supervisory policy making officers and officials or employees of MDOC, as a matter of policy, practice, and procedure, said Defendants:

   a.   failed to take appropriate and necessary steps to discover and determine that said policies, practices and procedures had and would continue to result in injuries to Plaintiff and those similarly situated; specifically, Defendants failed to have a policy of assessing serious medical need for illnesses common to an ordinary person or, if having such policy, failed to enforce the same.

   b.   failed to discipline and properly supervise the individual officers, deputies, and employees who engaged in the said acts pursuant to these policies, practices and procedures which resulted in Plaintiff's injury;

   c.   failed to effectively train and supervise the said individual Defendants with regard to the proper constitutional and statutory limits of their authority;

   d.   ratified said policies, practices and procedures which caused Plaintiff's injury through their deliberate indifference to the effect of said policies, practices and procedures on the constitutional rights of citizens such as Plaintiff;

   e.   failed to formulate or adopt appropriate policies, practices and procedures to instruct and train employees and jail personnel in the implementation of such policies, practices and procedures to protect inmates similarly situated to Plaintiff;

   f.   adopt and ratify policies, practices and procedures which constitute a violation of the United States Constitution, or played a significant causal role in denial of the constitutional rights of Plaintiff.

66.    As a result of Defendants' actions and omissions, Plaintiff has suffered damages which include but are not limited to the following: medical bills, great pain, mental anguish, emotional distress, disfigurement, embarrassment, and humiliation, permanent serious disfigurement and permanent scarring, and other permanent disabilities.

WHEREFORE, for all the above reasons, Plaintiff demands judgment against Defendants, jointly and severally, in whatever amount he is found to be entitled, as determined by the trier of fact, together with punitive and/or exemplary  damages, costs, interests, attorney fees, including but not limited to such attorney fees as are allowable under 42 USC §1988.

## COUNT III - FEDERAL UNITED STATES CONSTITUTIONAL VIOLATIONS BY INDIVIDUAL DEFENDANTS

67.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

68.    The individual Defendants and each of them owed a duty to Plaintiff as a detainee of the Michigan Department of Corrections to provide him with appropriate protections to his person and reasonable medical care upon being told of his medical complaints, including but not limited to:

    a.   proper monitoring of Plaintiff's health and physical condition;

    b.   timely scheduling diagnostic tests and treatment

    c.   regularly examining Plaintiff for signs and symptoms of medical illness or disease after he had made complaints regarding such;

    d.   detecting signs and symptoms of Plaintiff's serious health condition and providing timely intervention of the same.

69.   Despite the individual Defendants' knowledge of the ongoing suffering of the Plaintiff, they refused to take reasonable steps to provide for Plaintiff's safety and provide medical attention, at variance with constitutional standards as follows:

    a.   failing to take heed of the seriousness of Plaintiff's complained of condition when they knew or should have known that the Plaintiff was suffering from a serious risk of harm and then a serious medical condition, which can be permanently disfiguring if the patient is not properly attended to;

    b.   failing to have Plaintiff evaluated by a medical professional within a reasonable time of registering complaints of his condition while in the custody of Defendants;

    c.   failing to have Plaintiff evaluated at the jail by a nurse, doctor and/or emergency medical service technician when he was in need of immediate medical attention and supervision.

    d.   failing to transport Plaintiff to a medical facility within a reasonable time of his complaints;

    e.   failing to order Plaintiff immediate hospitalization and provide the necessary treatment for the well-known dangers regarding his complaint.

70.   As a result of Defendants' actions and omissions, Plaintiff has suffered damages which include but are not limited to the following: medical bills, great pain, mental anguish, emotional distress, disfigurement,

embarrassment, and humiliation, surgery and permanent serious

disfigurement and permanent scarring, and other permanent disabilities.

WHEREFORE, for all the above reasons, Plaintiff demands judgment

against Defendants, jointly and severally, in whatever amount he is found to

be entitled, as determined by the trier of fact, together with punitive and/or

exemplary damages, costs, interests, attorney fees, including but not limited

to such attorney fees as are allowable under 42 USC §1988.

## COUNT IV - STATE LAW VIOLATION--GROSS NEGLIGENCE

71.    Plaintiff incorporates all preceding paragraphs as though fully set

forth herein.

72.    The individual Defendants owed a duty to Plaintiff as a detainee of the

Michigan Department of Corrections to provide him with appropriate and

reasonable protections against unreasonable risks of harm and to provide

medical care consistent with the appropriate community standard, including

but not limited to:

    a.    Proper monitoring of Plaintiff's health and physical condition;

    b.    Proper, appropriate and necessary diagnosis, treatment and care of his physical complaints;

    c.    Regularly checking on Plaintiff's for signs and symptoms of risk of harm or medical illness; and

    d.    Detecting signs and symptoms of a significant risk of harm or medical illness and attending to his complaints by referring him to the appropriate medical professional.

22

73.    Despite the individual Defendants' multiple contacts with Plaintiff and his multiple complaints of pain and the complaints of others in the cell with Plaintiff, the individual Defendants' refusal to take reasonable steps to provide medical attention and were grossly negligent in the following particulars:

     a.   Failing to timely have Plaintiff scheduled for diagnosis, testing and treatment;

     b.   Failing to provide Plaintiff with any medical care and attention even though he consistently complained of distress;

     c.   Failing to monitor Plaintiff;

     d.   Failing to check with a person with competent training and/or ability to diagnose Plaintiff's condition;

     e.   Failing to transport Plaintiff to a medical facility or doctors office for evaluation and treatment;

     f.   Failing to investigate and/or communicate the severity of Plaintiff's housing or medical condition to anyone; and

     g.   Failing to follow the procedures implemented by the jail and/or failing to implement the proper procedures to take care of inmates such as the Plaintiff.

74.    Based on the above facts plead in avoidance of governmental immunity, individual Defendants' conduct is exempt from governmental immunity pursuant to MCL 691.1407, because the individual Defendant's conduct in withholding medical care for many days, then failing to monitor the Plaintiff was grossly negligent in that such conduct was so reckless as to

23

demonstrate a substantial lack of concern for whether an injury to Plaintiff resulted.

75.     As a result of Defendants' actions and omissions, Plaintiff has suffered damages which include but are not limited to the following: medical bills, great pain, mental anguish, emotional distress, disfigurement, embarrassment, and humiliation, permanent serious disfigurement and permanent scarring, and other permanent disabilities.

WHEREFORE, for all the above reasons, Plaintiff demands judgment against Defendants, jointly and severally, in whatever amount he is found to be entitled, as determined by the trier of fact, together with punitive and/or exemplary  damages, costs, interests, attorney fees, including but not limited to such attorney fees as are allowable under 42 USC §1988.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC
By: RACINE M. MILLER (P72612)
*Attorneys for Plaintiff*
135 N. Old Woodward Ave Ste 270
Birmingham, MI 48009
P: 844.464.3476 F: 248.237.3690
racine@themichiganlawfirm.com
(P72612)

Dated:  December 27, 2021

## JURY DEMAND

NOW COMES Plaintiff by and through counsel, and hereby demand a trial by jury of each and every matter at issue in the above-entitled cause.

24

Respectfully submitted,
THE MICHIGAN LAW FIRM, PC
By: RACINE M. MILLER (P72612)
*Attorneys for Plaintiff*
135 N. Old Woodward Ave Ste 270
Birmingham, MI 48009
P: 844.464.3476 F: 248.237.3690
racine@themichiganlawfirm.com
(P72612)

Dated:  December 27, 2021

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the plaintiff compensatory, exemplary, and punitive damages commensurate with his injuries for all qualified claims, and enter a judgment for the plaintiff; declare that Plaintiff's constitutional rights were violated by the defendants; award the plaintiff his costs, interest from the date of filing, and reasonable attorneys' fees as permitted by federal law; and grant such further relief as the Court sees fit.

Respectfully submitted,
THE MICHIGAN LAW FIRM, PC
By: RACINE M. MILLER (P72612)
*Attorneys for Plaintiff*
135 N. Old Woodward Ave Ste 270
Birmingham, MI 48009
P: 844.464.3476 F: 248.237.3690
racine@themichiganlawfirm.com
(P72612)

Dated:  December 27, 2021

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 27, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record in this matter.

/s Racine M. Miller
Racine M. Miller