UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY ALLEN McELHANEY,

                Plaintiff,                    Civil Action No. 21-13021

v.                                     Judith E. Levy
                                     United States District Judge

HEIDI E. WASHINGTON, *et al.*,      David R. Grand
                                     United States Magistrate Judge

                Defendants.

_____/

## REPORT AND RECOMMENDATION ON THE CORIZON DEFENDANTS' MOTION TO DISMISS (ECF No. 20)

On December 27, 2021, plaintiff Randy McElhaney ("McElhaney") commenced this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1). In his amended complaint, filed on September 21, 2022, McElhaney names as defendants several individuals who are or were employees of the Michigan Department of Corrections ("MDOC"), as well as Corizon Healthcare, Inc. and two of its employees, Donna Rohrs, P.A. and Jordan Block, P.A. (collectively the "Corizon Defendants"). (ECF No. 18). McElhaney alleges that the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, and he also pleads a state law claim for gross negligence. (*Id.*). An Order of Reference was entered on January 6, 2022, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 4).

Before the Court is a motion to dismiss, which was filed by the Corizon Defendants on October 12, 2022. (ECF No. 20). McElhaney filed a response to this motion on

November 2, 2022 (ECF No. 21), and the Corizon Defendants filed a reply on November 14, 2022 (ECF No. 22).   Subsequently, McElhaney sought and obtained the Court's permission to file a sur-reply, to which the Corizon Defendants responded.  (ECF Nos. 23, 24, 25, 26).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Corizon Defendants' Motion to Dismiss **(ECF No. 20)** be **GRANTED IN PART** and **DENIED IN PART**.

## II.    REPORT

### A.    The Allegations in McElhaney's Amended Complaint

At all relevant times, McElhaney was incarcerated at the Central Michigan Correctional Facility ("STF") in St. Louis, Michigan.  (ECF No. 18, PageID.158).[1]  In relevant part, McElhaney alleges in his amended complaint that Corizon employees PA Rohrs and PA Block were deliberately indifferent to his serious medical needs when they failed to promptly and properly treat an injury to his left biceps tendon.  Specifically, McElhaney alleges that, on December 26, 2019, he injured his left arm while playing

---

[1]    On    December    9,    2022,    McElhaney    was    paroled.    *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=229828    (last    accessed February 2, 2023).

volleyball at STF.   (*Id*., PageID.162).   On January 3, 2020, McElhaney kited STF healthcare, requesting medical treatment for his arm.   (*Id.*).   According to McElhaney, he was examined by Michelle Kirby, RN (an MDOC employee) on January 15, 2020; at that time, she noted that McElhaney's left biceps had a "sunk-in" appearance and was tender to the touch.   (*Id.*, PageID.163).   RN Kirby provided McElhaney with a handout on "Strains and Sprains"; she also ordered an ace bandage, ice, and advised McElhaney to refrain from sports activities for one week.   (*Id.*).   On January 23, 2020, McElhaney saw Shelton Douglas, RN (also an MDOC employee) in follow up.   (*Id.*).   RN Douglas noted deformity of the arm and pain on palpation and extended McElhaney's medical detail for an ace bandage to February 6, 2020.   (*Id.*).

On February 19, 2020, McElhaney saw PA Rohrs for the first and only time.   The entirety of McElhaney's allegations as to PA Rohrs is as follows:

> Donna Rohrs, RN, examined Plaintiff on February 19, 2020:
>
> a.   Noted ICD-101 code S46 ("S46 being 'injury of muscle, fasia [sic] and tendon at shoulder and upper arm level'"), "Temporary/Acute"
>
> b.   she designated his complaint as "routine" and recommended an ultrasound be conducted within 14 days, specifically noting that
>
> c.   "diagnosis of a distal biceps tendon rupture using only clinical signs can be challenging and treatment typically involves expedited surgical repair.   Therefore, diagnostic imaging plays an important role in management …."
>
> Despite actual knowledge of Plaintiff's serious injury, Rohrs failed to provide timely and appropriate medical care, delaying the scheduling of the ultrasound until May 14, 2020, resulting in a delay of necessary medical diagnosis and treatment which resulted in permanent injury to Plaintiff.

3

(*Id.*, PageID.164).  Eight days later, on February 27, 2020, McElhaney was approved for an ultrasound of the suspected torn muscle.  (*Id.*).  However, McElhaney alleges that Jessica Moore, LPN (an MDOC employee) "denied" scheduling of that ultrasound.[2]  (*Id.*).

McElhaney summarizes PA Block's "relevant interactions" with him as follows:

> a. 2/28/20, CRV[3] to see if offsite request for Bicep[s] ultrasound was approved; consult request was approved. Will send CHJ-646 (Diagnostic Testing Results Notification) to inform patient ….[]
>
> b. 4/8/2020, telephone encounter, patient awaiting ultrasound
>
> c. 4/24/20; noted it's been over 30 days since approval for ultrasound, and that the muscle injury was "…Stable.  No new changes; []Patient to KITE healthcare if any questions or concerns."
>
> d. 5/12/20 requested an **urgent request for ultrasound to be performed at local hospital** instead of Duane Waters Hospital because of "**delay in Ultrasound at Duane Waters Hospital with current COVID-19 protocol**," noting a [P]opeye deformity, negative hook test, and negative biceps squeeze," and that that "**treatment typically involves expedited surgical repair, therefore, diagnostic imaging plays an important role in management ….**"
>
> * * *

(*Id.*, PageID.165-66) (footnote added) (emphasis in original).

On May 14, 2020, just two days after PA Block placed the "urgent request" for an

---

[2] It is not clear from McElhaney's amended complaint exactly when LPN Moore allegedly "denied" the scheduling of this ultrasound.  McElhaney references an April 23, 2020, note in which LPN Moore indicated that McElhaney "'was scheduled for ultrasound on 4/1/20, cancelled due to COVID-19, not rescheduled yet.'"  (ECF No. 18, PageID.165).  However, it is not entirely clear when (or if) the ultrasound was originally scheduled to take place.

[3] The meaning of this acronym is not clear.

ultrasound, it was performed at Sparrow Health System and revealed a "full-thickness retracted tear of the bicipital tendon from the radial tuberosity, retracted at least 8 cm from the joint line.  Lack of intervening hematoma and fatty atrophy of the bicipital musculature is compatible with a remote injury."  (*Id.*, PageID.167).  McElhaney alleges that, after reviewing the results of this ultrasound, PA Block indicated that he would "submit request for urgent ortho follow-up given above findings."  (*Id.*, PageID.166).  Indeed, on May 17, 2020, McElhaney was seen by Thomas Havebush, M.D., who **"[did] not believe that an attempt at repair [of the biceps tendon] would be reasonable, due to the traction of the tendon and atrophy of the muscle** …."  (*Id.*, PageID.167) (emphasis in original).  PA Block's notes from June 20, 2020, and June 22, 2020, respectively, allegedly reflect cancelation of the previously-approved ultrasound at Duane Waters Hospital (since it had been performed at Sparrow in the interim) and that McElhaney's biceps tendon tear was deemed "not repairable at this time given retraction of the muscle/time since initial injury." (*Id.*, PageID.166).

McElhaney alleges that, as a result of the defendants' delay of necessary medical treatment, he will now suffer a "functional deficit" in his left arm "for the rest of his life." (*Id.*, PageID.167) (emphasis omitted).  In terms of his legal claims, McElhaney alleges, in relevant part, that PA Rohrs and PA Block were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[4]  (*Id.*, PageID.169-71).  In the instant

---

[4] To the extent McElhaney attempts to plead an Eighth Amendment deliberate indifference claim against Corizon – which is not at all clear from the vague allegations contained in the amended complaint – such a claim fails as a matter of law.  To begin with, Corizon cannot be held liable for the alleged actions of PA Rohrs and/or PA Block under principles of *respondeat superior*.  *See*

motion, the Corizon Defendants argue that McElhaney's deliberate indifference claim should be dismissed for failure to state a claim.[5]   The parties' arguments are addressed below.

### B.   Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.   Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing

---

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018).   Rather, to state a claim against Corizon, McElhaney was required to identify an allegedly unconstitutional policy, practice, or custom of Corizon and connect that policy, practice, or custom to his injury.   *See Monell*, 436 U.S. at 690-91 (1978).   Here, McElhaney has not pointed to *any* specific policy, practice, or custom of Corizon, let alone connected it to his alleged injury.   At best, McElhaney alleges in his amended complaint that Corizon "helped formulate and implement the customs, policies, practices, procedures, and staff training protocols related to medical care in MDOC facilities" and "fail[ed] to implement the proper procedures to take care of inmates such as [McElhaney]."   (ECF No. 18, PageID.160, 173).   However, such vague allegations are insufficient to state a claim under *Monell*.   *See, e.g., Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) ("to satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy") (internal quotations omitted); *Estate of Abbey v. Herring*, 598 F. Supp. 3d 572, (E.D. Mich. 2022) (*Monell* claim dismissed where plaintiff failed to identify specific policy that resulted in substandard health care).   Thus, to the extent McElhaney is pleading a *Monell* claim against Corizon, such a claim should be dismissed.

[5] The Corizon Defendants do not move for dismissal of McElhaney's gross negligence claim. Thus, the Court need not consider the merits of such a claim at this time.

*Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."   *Twombly*, 550 U.S. at 556.   Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   This tenet, however, "is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.   *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).   Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading[.]"   *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).   Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal*, 556 U.S. at 679.

### C.   Analysis

#### 1.   *The Deliberate Indifference Standard*

As to his Eighth Amendment claim, McElhaney must prove that the defendant in

7

question was deliberately indifferent to his serious medical needs.  To succeed on such a claim, McElhaney must satisfy two elements: one objective, and one subjective. Specifically, he must show that he had a serious medical need (the objective prong) and that the defendant, being aware of that need, acted with deliberate indifference to it (the subjective prong).  *See Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010).

With respect to the objective prong, a serious medical need must be more than "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted).  Rather, "[t]he objective component requires the existence of a sufficiently serious medical need." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012).  A serious medical need is one that "has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (internal quotations omitted) (emphasis in original).  An injury is sufficiently serious to satisfy the objective component if a reasonable doctor or patient would find it "important and worthy of comment or treatment"; if it "significantly affects an individual's daily activities"; or if its existence causes "chronic and substantial pain." *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (internal quotations omitted).

To satisfy the subjective prong, the plaintiff must show that the defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles*, 478 F. App'x at 975 (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).  Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's

8

health, yet recklessly disregards the risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 F. App'x at 975 (internal citations and quotations omitted).

Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). As the Sixth Circuit further explained in *Comstock*:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." Instead, "deliberate indifference to a substantial risk of serious harm to a prison is the equivalent of recklessly disregarding that risk."

*Id.* (internal citations omitted).

The law is clear, however, that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs

do not rise to the level of deliberate indifference.  *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004).  Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

Here, there can be little dispute that McElhaney's torn biceps satisfies the objective prong of the deliberate indifference test.  The issue, then, is whether he has alleged that PA Block's and/or PA Rohrs' alleged actions and/or inactions were undertaken with a sufficiently culpable state of mind so as to satisfy the requisite subjective prong.  *See Broyles*, 478 F. App'x at 975.

### 2. *PA Block*

With respect to PA Block, taking the allegations in McElhaney's amended complaint as true, he has failed to state a claim for deliberate indifference.  According to McElhaney, on February 28, 2020, PA Block verified that the offsite request for an ultrasound of McElhaney's biceps had been approved.  (ECF No. 18, PageID.165).

Amidst the chaos of the early days of the pandemic, there is no further indication of PA Block's involvement with McElhaney's care until April 8, 2020, when McElhaney alleges that PA Block learned by telephone that he was still awaiting an ultrasound.  (ECF

10

No. 18, PageID.165).[6]  On April 24, 2020, PA Block allegedly noted that it had been "over 30 days since approval for ultrasound"; however, McElhaney's injury was characterized as "Stable."  (*Id.*).  According to McElhaney's amended complaint, PA Block next examined McElhaney on May 12, 2020, noting a Popeye deformity, negative hook test, and negative biceps squeeze.  As a result, PA Block placed an "**urgent request for ultrasound to be performed at [a] local hospital**" because of delays occurring at Duane Waters Hospital, the MDOC medical facility, with the then-current COVID-19 protocol.  (*Id.*, PageID.165-66) (emphasis in original).  On May 14, 2020, just two days after PA Block placed the urgent request for an ultrasound, it was performed at Sparrow Health System, revealing a full-thickness retracted tear of the bicipital tendon.  (*Id.*, PageID.167).  Given the ultrasound findings, PA Block submitted a request for "urgent ortho follow-up"; McElhaney was then seen by Dr. Havebush on May 17, 2020, at which time it was determined that surgical repair of the tendon was not possible.  (*Id.*, PageID.166-67).

As the facts alleged by McElhaney make clear, PA Block did not become involved in the care of McElhaney's injured biceps until *after* the ultrasound had already been requested (by PA Rohrs on February 19, 2020) and approved (by LPN Moore on February 27, 2020).  Just over one month later – a month in which the COVID-19 pandemic began

---

[6] While immaterial to the legal analysis, it is worth nothing that on March 10, 2020, the first confirmed cases of COVID-19 occurred in the state of Michigan; that day, Governor Gretchen Whitmer issued Executive Order No. 2020-4, declaring a state of emergency arising from the pandemic.  From there, a series of additional Executive Orders were issued restricting access to healthcare facilities (on March 14, 2020); requiring healthcare facilities to postpone all "non-essential procedures" (on March 20, 2020); and "[l]imiting off-site appointments for incarcerated persons to only appointments for urgent or emergency medical care" (on March 29, 2020). (Executive Order Nos. 2020-7, 2020-17, 2020-29).

and took hold in Michigan – PA Block learned that McElhaney was still awaiting the ultrasound.  There is no indication that, at that point, PA Block was aware of the severity of McElhaney's injury.  According to McElhaney's own allegations, PA Block monitored this issue on a bi-weekly basis until he examined McElhaney on May 12, 2020.  At that time, when PA Block noted a Popeye deformity, negative hook test, and negative biceps squeeze, he immediately placed an urgent request to switch the location of the ultrasound (from an MDOC facility to an outside facility).  Two days later, the ultrasound was performed.  Immediately after learning of the ultrasound results, PA Block put in an urgent request for McElhaney to be seen by an orthopedic surgeon; this happened on May 17, 2020.

Even construing McElhaney's allegations in the light most favorable to him, it is clear that, far from acting with deliberate indifference, PA Block took numerous steps to ensure McElhaney received timely and adequate care for his injury.  There is simply no indication that PA Block intentionally denied or delayed access to medical care for the purpose of inflicting harm on McElhaney.  Accordingly, where the facts as alleged in McElhaney's amended complaint do not support an inference that PA Block was deliberately indifferent to a serious medical need, McElhaney's Eighth Amendment claim against him should be dismissed.  *See Farmer*, 511 U.S. at 837 (official must know of and disregard an excessive risk to inmate health or safety); *see also Carter v. Akinyombo*, No. 21-CV-00872 (NSR), 2022 WL 2307679, at *7 (S.D.N.Y. June 27, 2022) (dismissing plaintiff's deliberate indifference claim where hip replacement surgery was repeatedly delayed during COVID-19 pandemic but named defendant did not control doctor's

schedule or hospital bed availability; instead, the fact that he granted the plaintiff's grievance and "raised his priority level … indicates he lacked the culpable intent" required under the Eighth Amendment).

For all of the foregoing reasons, the Corizon Defendants' motion to dismiss should be granted as to PA Block.

### 3.    *PA Rohrs*

The facts regarding PA Rohrs, as alleged by McElhaney, present a closer call as to whether the subjective prong of the deliberate indifference test has sufficiently been alleged.  According to McElhaney, PA Rohrs saw him only once, on February 19, 2020. (ECF No. 18, PageID.164).  At that time, PA Rohrs noted an injury of the muscle, fascia, and/or tendon; designated McElhaney's complaint as "routine"; and recommended that an ultrasound be performed within 14 days.  (*Id.*).  However, McElhaney further alleges that on that same date, PA Rohrs specifically noted that "diagnosis of a distal biceps tendon rupture ***using only clinical signs can be challenging*** and treatment typically ***involves expedited surgical repair.***  Therefore, diagnostic imaging plays an important role in management …." (*Id.*) (emphasis added).  McElhaney admits that he was approved for an ultrasound eight days later, on February 27, 2020, but alleges that it was someone else entirely – namely, LPN Moore (an MDOC employee) – who "denied" the scheduling of that ultrasound.  (*Id.*, PageID.164-65).

To avoid dismissal of his Eighth Amendment claim against PA Rohrs, McElhaney must show that PA Rohrs was subjectively aware of his serious medical need and *consciously disregarded it.  See Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008).

Although the facts alleged as to PA Rohrs are quite limited, taking them in the light most favorable to McElhaney, the allegations suffice to satisfy the subjective prong of the deliberate indifference standard.  As noted above, despite expressly recognizing that it would be "challenging" to diagnose his bicep injury "using only clinical signs," and that should McElhaney's biceps be torn, an "expedited surgical repair" would "typically" be required, PA Rohrs did not refer McElhaney for such emergency treatment.  (ECF No. 18, PageID.164).  Rather, she allegedly designated McElhaney's complaint as "routine," as opposed to "urgent," which meant she was allotting up to two-weeks for the ultrasound to be performed.  (*Id.*).  In short, McElhaney asserts that PA Rohrs was aware of the serious nature of his injury, knew that it might require *immediate* attention, and nevertheless ignored the urgency of the issue and requested an ultrasound on a "routine," delayed basis. (*Id.*).

The Corizon Defendants argue that whether McElhaney "believes his ultrasound request should have been given an elevated priority or not is a question of medical judgment and cannot give rise to deliberate indifference liability."  (ECF No. 22, PageID.240-41) (citing *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004)).  It is true that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference.  *See Umbarger*, 93 F. App'x at 736.  As McElhaney has framed the issue, though, his case is not about such a difference of opinion.  Rather, McElhaney's principal

14

allegation is that PA Rohrs *knew* that an "expedited" *evaluation* was required,[7] but that she nevertheless designated the ultrasound request as merely "routine," with a resultant delay. Consequently, it is conceivable that McElhaney could establish that PA Rohrs was deliberately indifferent to a serious medical need, which resulted in permanent and irreparable harm. *See Lewis v. Corr. Med. Servs.*, No. 08-13683, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009) ("Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention.").

For all of the foregoing reasons, the Corizon Defendants' motion to dismiss as to PA Rohrs should be denied.

## III.    CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Corizon Defendants' Motion to Dismiss **(ECF No. 20)** be **GRANTED IN PART**, as to McElhaney's Eighth Amendment claims against PA Block and Corizon Healthcare, Inc., and **DENIED IN PART**, as to McElhaney's Eighth Amendment claim against PA Rohrs.


Dated: February 2, 2023                              s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge

---

[7] PA Rohrs knew this because she knew that surgery might be required, and that if surgery was required, it typically needed to be performed on an "expedited" basis.

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 2, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager